IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE M. SINKER,** | : | CIVIL ACTION NO. 1:13-CV-2313 |
| **Plaintiff** | : | (Chief Judge Conner) |
| v. | : | |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | : | |
| **Defendant** | : | |

## MEMORANDUM

### Introduction

Plaintiff Rose M. Sinker has filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Sinker's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured." Sinker met the insured status requirements of the Social Security Act through December 31, 2009. Tr. 23.[1] Thus, Sinker must establish that she suffered from a disability on or before that date. 42 U.S.C. § 423(a)(1)(A).

Sinker protectively filed her application for disability insurance benefits on April 6, 2011, alleging that she became disabled on April 24, 2004. Tr. 21, 116.

---

[1] References to "Tr.\_" are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

1

By operation of the doctrine of *res judicata*, Sinker's period of disability was limited to February 8, 2008.  Tr. 22, 23.  Sinker has been diagnosed with several disorders, including: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, fibromyalgia, chronic obstructive pulmonary disease, hypertension, carpal tunnel syndrome, and hyperlipidemia.  Tr. 23-24, 510.  On May 26, 2011, Sinker's application was initially denied by the Bureau of Disability Determination.  Tr. 95.

A hearing was conducted by an administrative law judge ("ALJ") on March 23, 2012, where Sinker was represented by counsel.  Tr. 38-71.  On June 25, 2012, the ALJ issued a decision denying Sinker's application.  Tr. 21-30. On July 30, 2013, the Appeals Council declined to grant review.  Tr. 1.  Sinker filed a complaint before this Court on September 5, 2013, and this case became ripe for disposition on March 31, 2014, when Sinker filed a reply brief.

Sinker appeals the ALJ's determination on two grounds: (1) the ALJ erred in discounting Sinker's credibility, and (2) the ALJ erred in finding at Step Five that Sinker was not disabled.  For the reasons set forth below, the case is remanded to the Commissioner for further proceedings.

**Statement of Relevant Facts**

Sinker was forty-eight years of age at the time the ALJ rendered his decision; she has a tenth grade education and is able to read, write, speak and

understand the English language. Tr. 42, 130, 132. Sinker has past relevant work experience as a warehouse worker and forklift operator, which is classified as medium, unskilled work, and as a resort housekeeper, which is classified as light, unskilled work. Tr. 63.

### A.     Sinker's Relevant Physical Impairments

In 2007, just prior to the relevant period, Sinker began experiencing low back pain as well as muscle pain and fatigue. Tr. 251, 405. Sinker began treating with Ranju Singh, M.D. for her muscle pain and fatigue. Tr. 252. In late 2007, Dr. Singh noted that Sinker had a good range of motion in all joints and full strength throughout her extremities, although she did have a limited rotation of the hips. Tr. 248. However, Dr. Singh noted that all eighteen "triggerpoints" indicative of fibromyalgia were tender to palpation.[2] Id. Consequently, Dr. Singh diagnosed Sinker with "[s]evere fibromyalgia syndrome." Id.

On May 1, 2008, Sinker returned to Dr. Singh complaining of continued low back pain, fatigue, and occasional headaches. Tr. 247. A physical examination revealed good range of motion in the shoulders, elbows, and wrists, although Sinker experienced pain in the inguinal region during hip rotation. Id. Sinker had

---

[2] The American College of Rheumatology ("ACR") had developed guidelines for the diagnosis of fibromyalgia. Tr. 25. Under ACR guidelines, a diagnosis of fibromyalgia is established where an individual has a history of widespread pain and demonstrates pain to palpation at eleven out of eighteen "triggerpoints." Id.

normal muscle strength throughout.  Id.  Dr. Singh noted crepitus in Sinker's knees, and again noted positive tenderpoints of fibromyalgia.  Id.

Dr. Singh noted that a "recent" MRI revealed a moderate disc herniation at the L5-S1 level, as well as "impingement of the thecal sac traversing [the] left S1" vertebrae.  Id.  Dr. Singh reiterated a diagnosis of "severe fibromyalgia syndrome" but noted that Sinker had a good response to Lyrica.  Id.  Dr. Singh also diagnosed Sinker with "extensive degenerative disc disease" of the lumbar spine.  Id.

On August 28, 2008, Sinker presented to Dr. Singh for a follow-up appointment.  Tr. 246-47.  Sinker complained of severe "aches and pains" as well as stiffness in her muscles, particularly in her neck muscles.  Tr. 247.  Sinker stated that she was "very tired, and unable to exercise and do her duties of daily life."  Id.  She also complained of constant headaches and generalized fatigue.  Tr. 246.  Sinker had good range of motion in her shoulders, elbows, wrists, and hips, although she experienced pain at the extremes of her hip motion.  Id.  Sinker had normal grip strength, but had crepitus in the knees and a "very restricted" range of motion in her cervical spine.  Id.  Dr. Singh noted positive tenderpoints of fibromyalgia, especially involving the neck muscles.  Id.  Sinker was diagnosed with severe fibromyalgia syndrome and cervical degenerative disc disease.  Id.

On November 23, 2008, a CT scan was performed on Sinker's cervical spine.  Tr. 510-11.  This scan revealed degenerative disc disease at the C5-6 and

C6-7 levels. Tr. 510. The scan also revealed a "[l]oss of normal lordotic curve, presumably on the basis of muscle spasms." Id.

On January 1, 2009, Sinker presented to Dr. Singh complaining that she was "not doing well." Tr. 246. Sinker reported "a lot of discomfort" in her neck and shoulders accompanied by muscle weakness. Id. She was experiencing difficulty sleeping due to pain and was experiencing stiffness in her neck. Id. Sinker had good range of motion in her shoulder and hips, but crepitus was noted in her knees. Tr. 245. Dr. Singh noted tenderness in Sinker's left shoulder, cervical spine, and paraspinal muscles, and again noted positive tenderpoints of fibromyalgia. Id. Dr. Singh diagnosed Sinker with severe fibromyalgia syndrome "not well controlled" and with likely degenerative disc disease of the lumbar spine. Id.

By October 2009, Sinker was aching "all over all day long" and complained of decreased grip strength. Tr. 245. Sinker complained of muscle spasms, weakness on the left side of her body, occasional headaches emanating from her neck, and numbness and tingling in her fingertips. Id. Sinker reported that her pain had worsened since she had stopped taking Lyrica. Id. She stated that she was walking two miles each day, and this seemed "to help with fibromyalgia pain." Id. Sinker had good range of motion in her hips, shoulders, elbows and wrists, but again had crepitus in her knees. Id. Dr. Singh again noted positive tenderpoints of

fibromyalgia.  Id.  Dr. Singh diagnosed Sinker with severe fibromyalgia syndrome and severe degenerative disc disease of the cervical and lumbar spine.  Tr. 244.

On December 4, 2009, Sinker presented to the Pocono Medical Center emergency room with complaints of back pain and shortness of breath.  Tr. 492.  Sinker denied any weakness or numbness.  Tr. 494.  She had a normal gait, though tenderness was present at the lumbar spine region.  Tr. 496.  An x-ray of Sinker's lumbar spine revealed "severe interspace narrowing and endplate scoliosis at [the] L5-S1" level and "severe facet sclerosis and hypertrophy at the L5-S1 level possible resulting in some degree of bony foraminal narrowing."  Tr. 490.

### B.  Residual Functional Capacity Assessment

On May 26, 2011, Patricia Lenahan, S.D.M. reviewed Sinker's medical records in an attempt to complete a residual functional capacity assessment.  Tr. 91-93.  Dr. Lenahan opined that, at the time she reviewed Sinker's medical records, there was "insufficient evidence to evaluate the claim."  Tr. 92.  No consultative examination was ordered, and there were no other residual functional capacity assessments contained within the administrative record.

### C.  The Administrative Hearing

At the administrative hearing, Sinker testified that she was most significantly limited by back pain that traveled down her legs.  Tr. 43.  Sinker stated that most of her pain resulted from nerve damage.  Id.  Her only form of treatment was pain

6

medication, though she had tried surgery and epidural shots in the past without success.  Tr. 43-44.  Sinker also testified that her medication was only partially effective in controlling her fibromyalgia pain.  Tr. 52.

Sinker was limited in her activities due to pain and weakness.  Tr. 53.  She was unable to vacuum and could not bend down to clean.  Id.  Sinker was able to do laundry, wash dishes, and drive short distances.  Tr. 53-54.  Sinker would generally pass her days by watching television, walking around the grocery store, and dusting around the house.  Tr. 54.  She would shop for groceries daily in order to minimize the amount of groceries she had to handle at any one time.  Tr. 55.

After Sinker testified, Frances Terry, an impartial vocational expert, was called to give testimony.  Tr. 63.  The ALJ asked Ms. Terry to assume a hypothetical individual with Sinker's age, education, and work experience who was limited to sedentary work[3] and could only carry ten pounds.  Tr. 63, 66.  The hypothetical individual could bend to the knees occasionally, but could only rarely bend to the floor.  Tr. 64.  She could only crawl or climb ladders, scaffolds, or ropes in emergency situations, but could occasionally utilize ramps or stairs.  Id.  The individual could occasionally operate foot controls, and must avoid

---

[3] Sedentary Work is defined by the regulations of the Social Security Administration as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967.

concentrated exposure to respiratory irritants or poorly ventilated work settings. Tr. 64-65.

Ms. Terry opined that, given these restrictions, the hypothetical individual would be unable to perform Sinker's past relevant work. Tr. 66. However, the individual would be capable of performing three jobs that exist in significant numbers in the national economy: a telephone answering service operator, a customer service representative, and an information clerk. Id.

**Discussion**

In an action under 42 U.S.C. § 405(g) to review the Commissioner's decision denying a plaintiff's claim for disability benefits, the district court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims.  See 20 C.F.R. § 404.1520; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91-92 (3d Cir. 2007).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional

capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. See 20 C.F.R. § 404.1520. The initial burden to prove disability and inability to engage in past relevant work rests on the claimant; if the claimant meets this burden, the burden then shifts to the Commissioner to show that a job or jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason, 994 F.2d at 1064.

### A.    **Evaluation of Sinker's Credibility**

Sinker argues that the ALJ erred in finding that she was less than credible. Specifically, Sinker contends that the ALJ did not base his credibility decision on contrary medical evidence.

An ALJ's credibility determination is entitled to deference by a district court because "he or she has the opportunity at a hearing to assess a witness's demeanor." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). However, an ALJ's credibility determination is only accorded such deference when there is a "sufficient basis" for that determination. Izzo v. Comm'r of Soc. Sec., 186 F.App'x 280, 286 (3d Cir. 2006) (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999)). "Where medical evidence does support a claimant's complaints of pain, the complaints should be given 'great weight' and may not be

disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067-68 (citations omitted).

The ALJ found that Sinker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 28. Consequently, the ALJ could only discount Sinker's credibility on the basis of contrary medical evidence. Mason, 994 F.2d at 1067-68. Here, no medical evidence contradicted Sinker's subjective complaints of pain.

The ALJ noted that Sinker generally had stable physical examinations with full strength in her extremities and good range of motion throughout. Tr. 25-27. For most physical impairments, this would constitute contrary medical evidence. However, because of the unique nature of fibromyalgia, these objective medical findings do not constitute contrary medical evidence in this instance.

Fibromyalgia is a condition that is diagnosed primarily on subjective complaints, and "cannot be proven objectively." Steele v. Boeing Co., 225 F.App'x 71, 75 (3d Cir. 2007). Individuals who suffer from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 244 (6th Cir. 2007) (citing, Preston v. Sec'y of Health & Human Servs., 854 F.2d 815 (6th Cir. 1988)).

Here, every medical record from the relevant period referenced pain and fatigue. Tr. 245-48, 492. Dr. Singh noted positive triggerpoints of fibromyalgia at

11

every appointment within the relevant period. Tr. 245-48. These subjective complaints and objective findings strongly supported Sinker's credibility. In contrast, the objective findings cited to by the ALJ, such as full range of motion and full strength, do nothing to discredit Sinker's statements. Rogers, 486 F.3d at 244. No physician ever opined that Sinker was exaggerating the extent of her symptoms, and no physician opined that her reported symptoms were inconsistent with her medical impairments. As a result, the ALJ erred by rejecting Sinker's credibility without contrary medical evidence to support that decision. Mason, 994 F.2d at 1067-68.

The ALJ's credibility determination was further undermined by his failure to recognize degenerative disc disease of the cervical spine as a medically determinable impairment. Sinker's treating physician diagnosed her with "severe" degenerative disc disease of the cervical spine. Tr. 244. This diagnosis was confirmed by diagnostic imaging tests. Tr. 510. Despite this diagnosis, the ALJ did not consider, or even reference, Sinker's cervical degenerative disc disease. Despite this omission, the ALJ found that Sinker's statements concerning her pain and other symptoms were incompatible with her medically determinable impairments. Tr. 28. The ALJ's failure to analyze all medically determinable impairments, or provide an explanation for discounting Sinker's cervical

impairments, rendered the ALJ's credibility determination defective. E.g., Laforge v. Colvin, 1:13-CV-02219, 2014 WL 4717794, at *10 (M.D. Pa. Sept. 22, 2014).

Finally, the ALJ failed to mention the third party statement offered by Sinker's husband, Paul Sinker, Jr. Tr. 171-78. Third party statements bolster a claimant's credibility, and failure to evaluate such statements constitutes reversible error. See, Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000). On remand the ALJ must evaluate the third party statement submitted by Paul Sinker.

### B. Absence of Support for the ALJ's Residual Functional Capacity Determination

The ALJ's residual functional capacity determination as a whole was further compromised by the absence of any physician opinion supporting that determination. Generally, an ALJ may not reach a residual functional capacity determination without the benefit of a supporting assessment from a physician. See, Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."). See also, Bloomer v. Colvin, 3:13-cv-00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014); Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 779 (W.D. Pa. 2013).

In this instance, the ALJ's failure to obtain a physician assessment of Sinker's functional abilities was particularly harmful given her diagnosis of severe

fibromyalgia syndrome. As previously noted, fibromyalgia is not clearly marked by the manifestation of objective physical signs. The absence of objectively quantifiable limitations heightens the need for the ALJ, a lay individual, to obtain the opinion of a qualified physician regarding the claimant's residual functional capacity. Consequently, the ALJ erred in relying on his lay opinion in formulating a residual functional capacity. On remand, the ALJ must seek qualified medical opinion(s) regarding Sinker's residual functional capacity.

    C.    **The ALJ's Decision at Step Five**

Lastly, Sinker challenges the ALJ's reliance on vocation expert testimony in reaching a decision at Step Five of the sequential evaluation process. "A hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987)) (emphasis in original). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Id. (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

The ALJ posed a hypothetical question to the vocational expert that reflected the ALJ's ultimate residual functional capacity determination. Tr. 63-66. In response, the vocational expert identified three jobs that Sinker could perform. Tr.

66. However, as previously discussed, the ALJ's residual functional capacity determination was not supported by substantial evidence.  Therefore, the vocational expert's testimony based upon that determination was likewise flawed.  In sum, the ALJ's decision was not supported by substantial evidence.

**Conclusion**

A review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence.  Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order will be entered.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       October 3, 2014